# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAUL CAMPBELL FIELDS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF TULSA; CHARLES W. ) <br> JORDAN, *individually and in his official* ) <br> *capacity as Chief of Police, Tulsa Police* ) <br> *Department*; and, ALVIN DARYL ) <br> WEBSTER, *individually and in his official* ) <br> *capacity as Deputy Chief of Police, Tulsa* ) <br> *Police Department*, ) <br> ) <br> Defendants. | Case No. 11-cv-115-GKF-TLW |

## OPINION AND ORDER

This matter comes before the court on the motion for partial summary judgment of plaintiff Captain Paul Campbell Fields ("Fields") (Doc. #41); the motion for judgment on the pleadings and alternative motion for summary judgment of defendants Chief of Police Charles W. Jordan ("Jordan") and Deputy Chief of Police Alvin Daryl Webster ("Webster") in their individual capacities, (Doc. ##45, 47); and the motion for judgment on the pleadings and alternative motion for summary judgment of defendants City of Tulsa and Jordan and Webster in their official capacities (Doc. ##46, 48).

The court finds no reasonable jury could find Fields was personally ordered to attend the Law Enforcement Appreciation Day event at the Islamic Society of Tulsa because the directive at issue permitted him to assign others to attend rather than attend himself. Therefore, the directive did not conflict with Fields's sincere religious belief that he must proselytize when

confronted by others whose religious beliefs differ from his. The issue of whether a directive requiring his personal attendance at the event would have violated his First Amendment rights need not be decided here. The defendants' motions for summary judgment are granted, as more fully explained below.

## I. Background

Fields alleges the Tulsa Police Department violated his First Amendment rights by disciplining him after he refused to either attend or order his subordinates to attend a community policing event at the Islamic Society of Tulsa.

### A. Undisputed Facts

Captain Fields is an Tulsa Police Department officer. (Doc. #42 ¶1). Fields's chain of command consisted of Major Julie Harris, Deputy Chief of Police Alvin Webster, and Chief of Police Charles Jordan. (*Id.* ¶¶8-10).

TPD has a policy of engaging in community policing. (Doc. #45 ¶30). Building trust in the community is part of TPD's mission. (*Id.* ¶39). TPD accepted requests for attendance at 327 religious venues or from religious organizations between 2004 and 2011. (*Id.* ¶47).

The Islamic Society of Tulsa hosted a "Law Enforcement Appreciation Day" on Friday, March 4, 2011. (Doc. #42 ¶11). The Islamic Society had received threats in 2010, and TPD provided protection. (Doc. #45 ¶¶11-12). To show their thanks, the Islamic Society invited TPD, the Sheriff's Office, the district attorney's office, and the FBI to their Appreciation Day. (*Id.* ¶16). After discussing the event with Webster, the Islamic Society ensured the invitation made clear that officers need not tour the Mosque or discuss Islam to attend. (Doc. ##45 ¶¶17-18, 45-8 (Appreciation Day Flier)).

On January 25, 2011, Webster announced the Appreciation Day event at a staff meeting. (Doc. #45 ¶21; Doc. #42 ¶11). On February 16, 2011, Webster emailed the event invitation to

"All TPD Users" and asked officers to notify him if they would be attending. (Doc. #45 ¶¶21-22; Doc. #42 ¶22). That day, Webster also sent an email to the three patrol division majors, requesting:

> I have advised Ms. Siddiqui to expect small-group visits at 1100, 1330, and 1630. Please arrange for 2 officers and a supervisor or commander from each of your shops to attend at each of those times. They can expect to be at the facility for approximately 30 minutes but stay longer if they wish. Each Patrol Division will provide a total of 6 officers and 3 supervisors for the day's event….

(Doc. ##45 ¶25, 45-11). The next day, Major Harris emailed Fields, stating "[w]e are directed by DCOP Webster to have representatives from each shift – 2nd, 3rd, and 4th to attend" and pasting the above statement from Webster. (Doc. #45 ¶25; Doc. #42 ¶24).

On February 17, 2011, Fields responded via email to 15 people, including Harris, Webster, and Jordan, objecting to the directive to send 2 officers and a supervisor to each shift:

> I'm a little confused in reference to DCOP Webster's directive to send 2 officers and at least 1 supervisor or shift commander from 2nd, 3rd, and 4th, shifts to the Islamic Society of Tulsa Law Enforcement Appreciation Day. Initially, this was to be on a voluntary basis, however now it is a directive. What has changed?
>
> I have no problem with officers attending on a voluntary basis; however, I take exception to **requiring** officers to attend this event. Past invitations to religious/non-religious institutions for similar purposes have always been voluntary. I believe this directive to be an unlawful order, as it is in direct conflict with my personal religious convictions, as well as to be conscience shocking.
>
> This event is **not** a police "call to service", which I would readily respond to, as required by my Oath of Office. Instead, it is an invitation to, tour a Mosque, meet Muslim Leadership, watch a congregational prayer service, and receive "presentations on beliefs, human rights, and women." It is my opinion and that of my legal counsel, that forcing me to enter a Mosque when it is not directly related to a police call for service is a violation of my Civil Rights.
>
> Please consider this email my official notification to the Tulsa Police Department and the City of Tulsa that I intend not to follow this directive, nor require any of my subordinates to do so if they share similar religious convictions.

(Doc. #45-13) (emphasis in original).

- 3 -

The next day, Webster sent Fields a three-page, single-spaced interoffice correspondence, clarifying that "voluntary participation is desirable and should an adequate number of personnel volunteer, assignment would not be necessary… Should voluntary response not be up to the task, assignment would be the next alternative." (Doc. #45-22 at 1). Webster noted that "I and other personnel have either been detailed or strongly encouraged to attend community outreach events at the Jewish Community Center, churches in North Tulsa to reach out to African American residents, and churches in East Tulsa to reach out to Hispanic residents." (*Id.* at 1-2). And Webster explained that "[t]here is no distinction between performing our lawful duties in a reactive manner (call response) and doing so in a proactive manner (community outreach)." (*Id.* at 2). Webster also agreed that "[w]ere Police Department personnel expected to participate in religious services, I would agree with you… Personnel would not be required [to] participate in religious services on duty that they would not choose to participate in off duty." (*Id.*). Given the Department's clarification that "you are not required to participate or assist in any religious observance, make any expression of belief, or adopt any belief system," Webster encouraged Fields to reconsider his refusal to participate or identify others to participate. (*Id.* at 3). After conferring with his counsel, Fields responded that "there is no need to reconsider my decision." (Doc. ##45 ¶58, 45-25).

Webster ordered Fields to report to the Chief's office with his counsel on Monday, February 21st. (Doc. #45 ¶62; Doc. #42 ¶34). Fields recorded the meeting and recounts:

> Defendant Webster asked Plaintiff whether he sought volunteers, and Plaintiff responded, "Yes, I have." Defendant Webster then asked, "Okay, and the response?" to which Plaintiff responded, "Is zero." Defendant Webster then stated, "Alright. And so that makes this fairly easy. Are you prepared to designate two officers and a supervisor or yourself to attend this event?" Plaintiff responded, "No." Defendant Webster then stated, "If ordered?" Plaintiff responded, "No, Chief, I am not." Defendant Webster then stated, "Okay," and

referred to Defendant Jordan, stating, "Is there anything else you'd like to add, Chief?" to which Defendant Jordan stated, "No, sir."

Decl. of Captain Fields (Doc. #42-2 ¶40). At the end of the meeting, Fields received a prepared order transferring him to a different division and a notification that defendants were initiating an internal investigation for alleged violations of the Duty to be Truthful and Obedient (TPD Rule 6). (Doc. #45 ¶63; Doc. #42 ¶40). After the February 21st meeting, local media began covering the story. (*E.g.* Doc. #45-34).

Captain Luther Breashears conducted the internal investigation. (Doc. #45 ¶68). Fields then received a pre-Action hearing. (Doc. #45 ¶77). After the hearing, Deputy Chief Larsen recommended a four week unpaid suspension. (Doc. #45 ¶78). Jordan imposed one week unpaid suspensions each for violating the duty to be obedient (Rule 6) and for conduct unbecoming an officer (Rule 8). (Doc. #45 ¶79).

### B. Disputed Facts Accepted As True For Purposes of Deciding the Summary Judgment Motions

Fields asserts attendance at the Appreciation Day event was mandatory until he complained, when it then became voluntary. Defendants deny attendance was mandatory unless there were insufficient officers willing to attend. (Doc. #49 at 3).

Fields asserts his objection to attendance was based upon his religious beliefs. Fields describes the specific religious belief at issue:

> As a Christian, I have a duty to proselytize the Gospel of Jesus Christ. I also have a duty to repent for my sins and I have a duty to increase my relationship and my personal relationship with the Lord through the Scripture and good deeds….
>
> I have a duty as a Christian to proselytize to people that aren't of my faith. And when I come to work, I don't presume to know someone's religion. It doesn't enter into the question when I'm providing a police call for service. I'm there to provide a specific police service.
>
> Here I have an instance where I'm being compelled to attend an event that's very – it's an open invitation to discuss their religion. Certainly there's a reasonable

> expectation there will be discussion about their religion there, and yet I can't express my faith to them.
>
> It's in direct conflict. I don't know how to make it any clearer for you than that.

Dep. of Captain Fields (Doc. #42-28 at 62:23-63:25); *see also id.* at 66:14:25 ("As a Christian, I have a duty to proselytize my faith to people that are not of my faith. You know, this -- I said about before, I'm being compelled to go to an event hosted by a group of people that are not of my faith, where they are going to be speaking about their faith openly, and I can't comment on that. That's the moral dilemma I have. They are not of my faith. They don't have the same beliefs I have as far as Jesus Christ. So I can't, in good conscience, sit mute and not say anything because that violates my religious conscience."). Defendants deny that Fields's conduct was based on his religious beliefs and that his beliefs are sincere. They aver that Fields's conduct was motivated by anti-Muslim sentiment. (Doc. #49 at 3).

For the purposes of deciding the defendants' motion for summary judgment, the court accepts as true plaintiff's contentions that the directive to designate two officers and a supervisory or himself was mandatory and that his objection was based upon a sincere religious belief in his obligation to proselytize.

### C. A Reasonable Jury Could Not Find That The Department, Jordan, Or Webster Ordered Fields Personally To Attend the Appreciation Day Event

Fields suggests that Webster ordered him personally to attend the Appreciation Day event: "forcing me to enter a Mosque when it is not directly related to a police call for service is a violation of my Civil Rights." (Doc. #45-13); s*ee also* Doc. #42 ¶¶39 (adding emphasis to "or yourself"), 44 (adding emphasis to "your refusal to attend"). Defendants deny that Fields was required to attend the event. (Doc. #49 at 3).

The court finds the email unambiguously directed Fields to find volunteers or assign individuals to attend the Appreciation Day. Fields could have included himself among those

volunteers or assigned individuals, but he was not required to attend.  Doc. #45-11 ("Please arrange for 2 officers and a supervisor or commander from each of your shops to attend at each of those times."); Decl. of Captain Fields (Doc. #42-2 ¶40) (Webster: "Are you prepared to designate two officers and a supervisor or yourself to attend this event?" Fields: "No.").[1]

The legal analysis herein would not change if Fields had been ordered to attend, except in assessing whether the "individualized exemption" exception to the constitutionality of neutral, generally applicable laws would apply.  *Infra* § II.A.1) (Free Exercise).  In addition, even had Fields been required to attend the Appreciation Day, he was neither required to attend the afternoon prayer service nor was he required to listen to presentations on Islam.

**D.  Motions For Judgment On The Pleadings**

Defendants' motions each request judgment on the pleadings, or in the alternative, summary judgment.  (Doc. ##45 at 5, 46 at 7).  Because the defendants have submitted myriad attachments, deposition transcripts, and other materials outside the pleadings, and the court has elected to consider those materials, the motions for judgment on the pleadings are denied.  (Doc. ##47, 48).

---

[1] Statements after-the-fact describing the disciplined conduct as refusal to attend *and* refusal to order others to attend does not change the meaning of the directive itself as written in the original email and reiterated at the in-person February 21, 2012 meeting.  *See* Doc. ##42-3 at 2 ("Captain Fields was disciplined during this rating period for refusing to attend and refusing to direct that officers attend a law enforcement appreciation day at a local mosque."), 42-15 ("Chief Chuck Jordan has requested IA to conduct an administrative investigation in regards to your refusal to attend and refusal to assign officers from your shift, who shared your religious beliefs, to attend the "Law Enforcement Appreciation Day").

## II. DISCUSSION

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F3d 664, 670 (10th Cir. 1998). A court must examine the factual record in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler*, 144 F.3d at 670. In essence, the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**1) Free Exercise Clause**

Taking all reasonable inferences in his favor, Fields's primary claim is that his superior officers ordered him to order his subordinates to attend the Appreciation Day event and/or to attend the event himself, and that order violated his sincerely-held religious belief that he must proselytize to non-Christians because the event was at an Islamic Mosque where optional tours and discussions on Islamic topics would occur. These allegations are insufficient to require submission to a jury, as a reasonable jury could only find that defendants did not violate Fields's freedom to exercise his own religion.

Fields must show the government limited his right to freely exercise his religious belief. "The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). Fields identifies the religious belief or practice being impugned as his religion's requirement to proselytize. For purposes of summary judgment, the court accepts that the asserted religious belief is sincere. *Cf. United States v. Seeger*, 380 U.S. 163, 185 (1965) (permitting courts to "to decide whether the beliefs professed… are sincerely held").

The Free Exercise Clause of the First Amendment protects individual religious belief from government action. But neutral rules of general applicability do not usually raise free exercise concerns, and are reviewed merely for a rational basis. *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1294 (10th Cir. 2004). "By contrast, if a law that burdens a religious practice or belief is not neutral or generally applicable, it is subject to strict scrutiny, and the burden on religious conduct violates the Free Exercise Clause unless it is narrowly tailored to advance a compelling government interest." *Id.* The order given to Fields was a neutral, generally applicable order. The order applied to all similarly situated officers. The order requested Fields

ensure two officers and a supervisor attend the Appreciation Day event. Fields characterizes the order as not neutral because no previous order had required officers to attend such an event at a religious location where religious services would be ongoing and optional discussion about the religion itself would be offered. That misconstrues the neutrality required. The order here applied neutrally and generally to all officers; it did not single out officers of a certain religion. Thus, only a rational basis must exist for the order. The Police Department's commitment to community policing provides a rational basis for the order.

Fields next asserts that if the Department provided any individualized exceptions to attending the event, it is required to provide religious-based exceptions. The "individualized exemption" exception to *Smith*'s treatment of neutral, generally applicable rules does not apply here. When "individualized exemptions from a general requirement are available, the government may not refuse to extend that system to cases of religious hardship without compelling reason." *Church of Lukumi Babalu Aye,* 508 U.S. at 537 (citing *Smith,* 494 U.S. at 884). The Tenth Circuit considers any exemptions that require case-by-case inquiries under a "subjective test" to be such a system. *Axson-Flynn*, 356 F.3d at 1297-98; *see also Sherbert v. Verner*, 374 U.S. 398 (1963) (denial of unemployment benefits for failure to work Saturdays forced Sherbert to choose between her religion and forfeiting benefits). Here, the Department gave no individualized exemptions to the directive to send two officers and a supervisor to the event. Fields incorrectly focuses on Department exemptions from attending the event. If the Department had ordered Fields to attend personally and provided other exemptions that require a case-by-case subjective assessment, the Department would have to provide a religious-based exception as well or show the directive was narrowly tailored to accomplishing a compelling state interest. *See Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d

359 (3d Cir. 1999) (holding police department policy providing medical exemptions to its no-beard requirement while refusing religious exemptions was subject to heightened scrutiny). Because Fields could have assigned others to attend and did not have to attend himself, the court need not analysis the directive under this stricter standard. Fields provides no evidence that the directive to order three people to attend the event was subject to any individual exemptions.

Therefore, Fields's free exercise claim fails because the directive was a neutral, generally applicable rule sustained by a rational basis.[2]

### 2) Expressive Association

Defendants have not infringed Fields's right to associate or not associate with any organization. In *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006), the Supreme Court held that law school's freedom of expressive association was not infringed by a statute requiring law schools to allow military recruiters on campus to receive federal funding. The Court held:

> To comply with the statute, law schools must allow military recruiters on campus and assist them in whatever way the school chooses to assist other employers. Law schools therefore "associate" with military recruiters in the sense that they interact with them. But recruiters are not part of the law school. Recruiters are, by definition, outsiders who come onto campus for the limited purpose of trying to hire students-not to become members of the school's expressive association. This distinction is critical.

---

[2] Because the directive is a neutral, generally applicable rule sustained by a rational basis, the court need not consider whether the *Garcetti-Pickering* doctrine–that the government may place greater restrictions on public employee's free speech–applies to other First Amendment rights, including the freedom to exercise one's religion. *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) ("The Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."); *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will County, Ill.*, 391 U.S. 563, 578 (1968) ("the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general").

*Id.* at 69. Officers attending the Appreciation Day event were "outsiders" who went to the Mosque for a limited purpose. Fields was never ordered to become a member of any group nor to cease being a member of any group. Fields simply does not state a violation of the First Amendment's guarantee of freedom of association. *See id.*

### 3) Establishment Clause

The order to send two officers and a supervisor to the Appreciation Day event did not violate the Establishment Clause. Despite its indeterminacy, the *Lemon* test is applied to determine whether government action violated the Establishment Clause. "To pass constitutional muster, the governmental action (1) 'must have a secular legislative purpose,' (2) its 'principal or primary effect must be one that neither advances nor inhibits religion,' and (3) it 'must not foster an excessive government entanglement with religion.'" *Weinbaum v. City of Las Cruces, N.M.*, 541 F.3d 1017, 1030 (10th Cir. 2008) (*quoting Lemon v. Kurtzman,* 403 U.S. 602, 612-13 (1971)). Addressing the first and second *Lemon* tests, the Tenth Circuit "interprets the purpose and effect prongs of *Lemon* in light of Justice O'Connor's endorsement test." *Am. Atheists, Inc. v. Davenport*, 637 F.3d 1095, 1117 (10th Cir. 2010). Under that test, *Lemon*'s purpose prong "asks whether government's actual purpose is to endorse or disapprove of religion. The effect prong asks whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval." *Id.*

First, the directive had a secular purpose. It ensured TPD officers would attend an outreach event to further the Department's community policing effort. TPD officers have attended scores of events at other religious locations and hosted by religious organizations. *See* Doc. #45-20 (listing over 300 events). The Department's commitment to interact with all Tulsa

communities encompasses the Appreciation Day event. No reasonable observer would see the directive as endorsing Islam or disapproving of Christianity.

Second, the principal effect of the directive neither advances nor inhibits religion. For similar reasons, directing Fields to arrange for two officers and a supervisor to attend the Law Enforcement Appreciation Day event did not advance Islam nor inhibit Christianity. And the directive does not convey an unwitting message of endorsement or disapproval of religion in general or a specific religion.

Third, the directive does not excessively entangle government with religion. Requiring Fields to assign other officers to a community policing event put on by an Islamic group does not entangle government with religion. The myriad events at other religious locations and hosted by other religious groups similarly did not entangle government with religion. *See* Doc. #45-20 (listing events). Moreover, the attending officers were not required to attend religious services or tour the Mosque.

The Establishment Clause does not bar TPD from directing Fields to identify officers to attend community policing events at religious locations or run by religious groups.

### 4) Equal Protection

Preliminarily, the court's statement in a previous order that Fields's claims under the "Establishment Clause and the Free Exercise Clause remain" must not be taken to imply that the Equal Protection Claim has been dismissed. (Doc. #25 at 7).[3] Fields's Amended Complaint remains, (Doc. #11), and the court did not dismiss the Equal Protection Claim. (*Contra* Doc. #46 at 22 (wherein the City of Tulsa argues the equal protection claim was dismissed)).

---

[3] In that Order, the court denied Fields's request to further amend his First Amended Complaint and add new claims.

Fields claims that defendants' directive that he assign two officers and a supervisor to the Appreciation Day event "had a discriminatory effect on Plaintiff and others who share Plaintiff's religious beliefs" and that defendants' actions "favored the religious beliefs and convictions of Muslims over those of non-Muslims." (Doc. #11 ¶¶94, 96). Fields's Equal Protection Claim fails.

First, Fields "tries to repackage [his] free exercise argument in equal protection language, by claiming that the [order] unduly burdens [his] fundamental right freely to exercise its religion." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 638 (7th Cir. 2007). Where, as here, the underlying free exercise argument fails, the Supreme Court requires only a "rational basis scrutiny" of the equal protection claim. *Id.* The directive did not treat Christians different than Muslims. It required Fields to identify subordinates, or himself, to attend an event. Neither on its face, nor in practice, did the directive discriminate against a group. And even if the directive did somehow discriminate, the TPD community policing effort provides a rational basis for doing so.

Second, Fields's claim might more properly be raised as an anti-retaliation claim under federal employment law. That Fields did not utilize the EEOC process to address the claimed retaliation does not turn a possible statutory claim into a constitutional one. "If this court were to hold otherwise, every claim of unlawful retaliation against a government employer, whether brought under state or federal law, could be transformed into an equal protection claim simply by defining the relevant class as consisting of those employees who challenged the government's unlawful employment policies." *Teigen v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007). The court will not do so here.

Finally, proof of "discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 253 (1977). Fields provides no evidence that defendants had discriminatory intent when issuing the directive.

### B. Qualified Immunity

The individual defendants are also entitled to summary judgment on the grounds of qualified immunity.

Qualified immunity protects government officials from individual liability in a section 1983 action unless the officials violated clearly established constitutional rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As a result, the Supreme Court has stressed that it is critical to resolve immunity questions at the earliest possible stage in the litigation. *See Saucier v. Katz*, 533 U.S. 194, 199-201 (2001); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

When a defendant pleads qualified immunity, the plaintiff bears the burden to show: "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right." *Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir. 1995). "Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Id.* The court may consider the two questions in any order. *Pearson v. Callahan,* 555 U.S. 223 (2009).

Here, the alleged right is not clearly established. Fields claims Jordan and Webster violated his constitutional right to free exercise, freedom of association, and equal protection by directing him to send two officers and a supervisor to the Appreciation Day event. First, the

First Amendment religion clauses, including the *Lemon* test, are notoriously unclear guidance in novel situations. *See Van Orden v. Perry*, 545 U.S. 677, 685-86 (2005); *Bauchman v. West High School*, 132 F.3d 542, 550-53 (10th Cir. 1997) ("Indeed, many believe the Court's modern Establishment Clause jurisprudence is in hopeless disarray, and in need of substantial revision"); *id.* (*Lemon* provides "no useful guidance to courts, legislators, or other government actors"). Jordan and Webster's desire to ensure attendance at the Islamic Society's Appreciation Day similar to other outreach events is understandable given their concern that differing treatment might have violated the Establishment Clause by appearing to disapprove of Islam. (Doc. #45-22 at 2). And Jordan and Webster's thoughtful response to the Islamic Society's request for officer attendance, including ensuring the visit's religious aspects were minimal and not required, further demonstrates their conscientious handling of the situation. Second, Fields's claimed Free Exercise clause violation concerns the right to not be forced by his municipal employer to send *other individuals* to a community event at a Mosque. Given the notable lack of cases cited involving even remotely similar circumstances, such a right–if it exists–was not well-established. Thus, defendants in their individual capacities are entitled to qualified immunity.

### III.     CONCLUSION

WHEREFORE, defendants' motions for summary judgment are granted. (Doc. ##45, 46). Defendants' motions for judgment on the pleadings are denied. (Doc. ##47, 48). Plaintiff's motion for partial summary judgment is denied. (Doc. #41).

DATED this 13th day of December, 2012.

*[signature]*
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT